[No. 39059. Department One. November 16, 1967.]

THE CITY OF PORT ANGELES, *Respondent*, v. STANDARD FOREST PRODUCTS, INC., *Appellant*.*

*Clarence H. Fidler*, for appellant.

*Tyler C. Moffett*, for respondent.

LANGENBACH, J.†—The harbor of the city of Port Angeles is formed by a long strip of land named Ediz Hook. The respondent city leased the uplands thereon from the government of the United States and subleased it to individual users. One of these is the defendant-appellant. In April 1940, a 93-year ground sublease was executed to appellant's predecessor in interest to 1 acre of land on the Hook for the annual rental of $100. The sublease contained the following pertinent provisions:

4

That the premises hereby sub-leased are to be used for and in connection with a shingle and other wood products manufacturing plant and any and all operations necessary or incidental thereto and the said premises shall not be used for any other purposes without the written consent of the party of the first part.

5

It is expressly understood and agreed that the party of the second part shall commence the construction of the plant mentioned in Clause 4 hereof within one hundred twenty (120) days from the date of this instrument and when completed shall be maintained and operated in good faith during the term of this lease, unless prevented by strikes, acts of God, or the public enemy, or other causes beyong [*sic*] the control of the party of the second part. It being understood that should said party of the second part fail to operate its plant for

*Reported in 433 P.2d 909.

†Judge Langenbach is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

a period of two years without good cause being shown therefor, then in that event, the City Commission of the City of Port Angeles, at its option, after giving party of the second part six (6) months notice in writing of its intention so to do, may revoke and declare this lease forfeited.

14

That if the City Commission or the party of the First Part shall at any time, after the completion of the plant hereinabove described, or at any time from and after two years from the date of this lease, find that all of the property and tide lands herein leased to Second Party are not necessary to the operation of Second Party's industries, then the City Commission may at its options, after having given Second Party twenty (20) days notice in writing, terminate the lease as to such unused portions.

Appellant operated a shingle mill on said premises until September 1963, when it was closed indefinitely because of adverse business conditions in the shingle industry. On December 23, 1963, the mill itself was totally destroyed by fire. Only the office and a warehouse remained on the premises. Because of the adverse business conditions the mill was never rebuilt.

In April 1964, respondent city wrote appellant to clean up and remove the debris of the fire damage from the premises. This was not completed until January 1966, just prior to the trial of this action.

In the meantime further correspondence occurred between the parties concerning the use of the premises. In addition, other inquiries were received from individuals interested in acquiring and using the site.

In March 1965, respondent wrote appellant that the sublease was being violated by storing logs upon the premises, and the sublease would be terminated in 5 months unless the premises were used for an industry. In June 1965, respondent wrote appellant that the 5-months' notice was being withdrawn and it would consider the sublease terminated and forfeited within 20 days after the receipt of that notice. This was apparently under section 14 of the sublease, *supra*.

In July a further letter from respondent to appellant stated that appellant was given 45 days in which to remove the remaining structures from the leased site or they would be removed at appellant's expense.

Appellant refused to surrender possession. Its rent had been paid for 1965 and it tendered the $100 for the 1966 rent which the city refused. Suit was commenced in October 1965, and appellant completed the cleanup of the premises in January 1966. Nothing further had been done pending the outcome of the litigation.

At the conclusion of the trial, the court rendered an oral opinion:

[F]rom March 1965 . . . there was nothing done to the property. He [defendant] testified he never advised the City of any plans to rebuild, and the abandonment of anything may be shown by conduct rather than anything else. . . . It would seem clear from this that the property leased herein is not necessary to the operation of the lessee's industry since there is no industry, and lessee would be subject to a twenty-day notice in writing declaring the lease terminated.

Thereafter the court made its findings of fact and conclusions of law and entered a judgment of forfeiture of the sublease. This appeal followed.

There were two assignments of error. The first assignment dealt with three of the trial court's findings of fact. The first finding claimed as error referred to the fact that the original sublease had not been approved by the United States Coast Guard as required by law. Inasmuch as the sublease had been renegotiated in November 1964, this finding may be considered as moot.

The second finding challenged referred to a letter of June 3, 1965, in which respondent determined that none of the property described in the sublease was necessary to the operation of appellant's industry and to the letter of June 25, 1965, which notified appellant that the sublease was terminated within 20 days thereafter, which 20 days had expired.

The evidence clearly showed that nothing had been done by appellant towards the reconstruction of the mill. Nor did it in any way use the premises in a manner required by section 4 of the sublease. From the time the mill burned in December 1963, no efforts had been made to rebuild it except for the removal of the metal burned in the fire. This task, in fact, was not accomplished until after the action for forfeiture had been commenced. Appellant's excuse for its lack of action was that the shingle industry was in a state of decline and consequently, the market did not justify the immediate replacement of the mill.

The third finding assailed was finding of fact No. 6 which stated that although appellant had received a number of letters from the city to do something with the leased premises or advise the city of its intentions, appellant remained silent until about 45 days prior to trial when the site was cleaned. The finding concluded: "By its lack of action and communication, the Defendant invited the Plaintiff to conclude that the Defendant had abandoned the leasehold property."

The second assignment of error pertained to the court's judgment that the sublease was forfeited by the 20-day notice.

Appellant argued that due to the nature of its business the provisions of section 5 of the sublease, *supra,* requiring a delay of 2 years of inactivity and then a 6-months' notice of forfeiture should be applied. It is contended that the court erred in applying the 20-day notice provision.

The undisputed facts disclosed that from September 1963, the mill had been closed and inoperative. It had burned in December 1963, and no effort had been made to replace the same. No further use of the site was made thereafter. In spite of the various letters from the city looking towards the cancellation of the sublease, appellant still remained inactive. Even after the city finally declared the sublease forfeited, appellant did nothing to the premises except to have the site cleared of the burnt debris just a short time prior to trial. All of the facts and circumstances in existence since September, or at least December 1963, pointed to the inescapable conclusion that the appellant had, to all intents and purposes, abandoned the premises covered by the sublease. During all of this expanse of time no practical use had been made of the premises.

Section 14 of the sublease, *supra,* provided that if the city should find at any time that all of the property leased to appellant was not

necessary to the operation of appellant's industry, the city may, after giving appellant 20-days' notice in writing, terminate the lease as to any unused portions. It was admitted that appellant was not using any portion of the leased premises save that the mill office and warehouse still remained upon the mill site. In effect, none of the property was necessary for appellant's industry because it had no industry. On this basis the city was fully justified in giving its 20-day notice of forfeiture. That period of time having elapsed and appellant being still inactive and the property not being used, it followed that the judgment of forfeiture was proper. The judgment of the trial court is affirmed.

FINLEY, C. J., WEAVER, ROSELLINI, and HALE, JJ., concur.